## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| EMCASCO INSURANCE COMPANY, and EMPLOYERS MUTUAL CASUALTY COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | No: 21-701 |
| v. | ) ) | |
| DM MANUFACTURING BELOIT, LLC, JAMES G. GRAFFT, ENVIRODYNE SYSTEMS INC., and PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiffs, EMCASCO INSURANCE COMPANY and EMPLOYERS MUTUAL CASUALTY COMPANY, by their attorneys, BODELL BOVE LLC, for their Complaint for Declaratory Judgment against Defendants DM MANUFACTURING BELOIT, LLC, JAMES G. GRAFFT, ENVIRODYNE SYSTEMS INC., and PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, states as follows:

## NATURE OF THE ACTION

1.     This lawsuit is a declaratory judgment action concerning the availability of insurance coverage under certain policies of insurance issued to DM Manufacturing Beloit, LLC, with respect to an underlying lawsuit that has been filed against, among others, DM Manufacturing Beloit, LLC and James G. Grafft in the Court of Common Pleas for Cumberland County Pennsylvania. This Complaint is being brought pursuant to 28 U.S.C. §§ 2201 and 2202.

## JURISDICTION

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

3.      EMCASCO Insurance Company (hereinafter "Emcasco") is a company organized and existing under the laws of the State of Iowa, having its office and principal place of business located in Des Moines, Iowa.

4.      EMPLOYERS MUTUAL CASUALTY COMPANY (hereinafter "Employers Mutual") is a company organized and existing under the laws of the State of Iowa, having its office and principal place of business located in Des Moines, Iowa.

5.      DM MANUFACTURING BELOIT, LLC, (hereinafter "DMB") is a limited liability company that was organized under Wisconsin law on or about June 12, 2017. According to the current records maintained by the Wisconsin Secretary of State's office, DMB's principal office is located in Janesville, Rock County, Wisconsin.  On information and belief, DMB's members are citizens of Wisconsin and DMB has no members that are citizens of Iowa.

6.      JAMES G. GRAFFT ("Grafft") is a natural person. On information and belief, Grafft is a citizen of Wisconsin and resides in Janesville, Rock County, Wisconsin.

7.      On information and belief, ENVIRODYNE SYSTEMS INC. ("ESI") is a corporation organized under the laws of the State of Delaware, that maintains its principal place of business in Pennsylvania.

8.      PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY ("Penn National") is a corporation that is organized under the laws of Pennsylvania and which maintains its principal place of business in Pennsylvania.

9.      The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

10.     Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because, on information and belief, certain defendants reside in Wisconsin and in this district and a substantial part of the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

11.     Emcasco is an insurance carrier licensed to issue policies of commercial general liability insurance in the States of Iowa and Wisconsin (among others).

12.     Employers Mutual is an insurance carrier licensed to issue policies of commercial umbrella liability insurance in the States of Iowa and Wisconsin (among others).

13.     When referred to collectively, Employers Mutual and Emcasco will be referred to as the "EMC Companies".

14.     Emcasco issued Commercial General Liability policy no. 6D1-02-10-20 to DM Manufacturing Beloit, LLC for the effective period of September 1, 2019 to September 1, 2020. The policy described in the preceding sentence will be referred to hereinafter as "the CGL policy."  A copy of the CGL policy is attached hereto as **Exhibit 1.**

15.     Employers Mutual issued Commercial Umbrella policy no. 6J1-02-10-20 to DM Manufacturing Beloit, LLC for the effective period of September 1, 2019 to September 1, 2020. The policy described in the preceding sentence will be referred to hereinafter as "the CU policy." A copy of the CU policy is attached hereto as **Exhibit 2.**

16.     On or about December 6, 2019, Envirodyne Systems, Inc. ("ESI") and Penn National initiated a lawsuit in the Court of Common Pleas of Cumberland County, Pennsylvania under case no. 2019-12868.  The lawsuit described in the preceding sentence will be referred to herein as "the underlying suit."

17.     DMB, among others, was named as a defendant in the underlying suit.

3

18.     DMB was aware that it had been sued in the underlying suit no later than December 13, 2019.

19.     Without providing notice of the underlying suit to the EMC Companies, DMB retained defense counsel to represent DMB in the underlying suit.

20.     A default judgment was entered against DMB in the underlying suit on or about October 29, 2020.

21.     On or about December 8, 2020, a Fourth Amended Complaint was filed in the underlying suit that identified James Grafft as a defendant.  A copy of the Fourth Amended Complaint is attached hereto as **Exhibit 3.**

22.     On December 14, 2020, DMB's insurance broker sent the EMC Companies notice of the underlying suit.

23.     DMB did not notify the EMC Companies of the underlying suit prior to December 14, 2020.

24.     Grafft did not notify the EMC Companies of the underlying suit prior to December 14, 2020.

25.     In the underlying suit, ESI alleges that ESI had a business relationship with a company named DM Manufacturing, Inc. ("DMI") for several decades in which DMI would provide certain wastewater equipment to ESI that ESI would in turn use in certain wastewater systems that ESI sold to ESI's customers.

26.     In the underlying suit, ESI alleges that DMB acquired the assets of DMI in or about October 2017 and that DMB subsequently (until at least 2019) knowingly and deceptively continued to hold itself out as DMI in an effort by DMB to maintain DMI's client base.

27.     In the underlying suit, ESI alleges that, in or about September and October of 2018, ESI ordered certain products, known as "primary clarifiers" and "secondary clarifiers" that were to be used in connection with certain improvements that were being made to a wastewater treatment facility known as the "Duck Island Waste Water Treatment Facility" that is located in Lowell Massachusetts.

28.     In the underlying suit, ESI alleges that, in September and October of 2018, ESI believed it was ordering the primary clarifiers and secondary clarifiers from DMI, but that ESI subsequently learned it was DMB that received the order for the primary clarifiers and secondary clarifiers.

29.     In the underlying suit, ESI has filed, as exhibits to ESI's pleadings, what ESI represents are copies of the two Purchase Orders that ESI claims to have issued in connection with ESI's purchase of the primary clarifiers and secondary clarifiers.

30.     In the underlying suit, ESI alleges the two relevant Purchase Orders are Purchase Order no. 9023(F)0l (which is dated 9/23/18) and Purchase Order no. 9023(B)0l (which is dated 10/30/18).  A copy of the document that ESI has alleged is Purchase Order no. 9023(F)0l is attached hereto as **Exhibit 4.** A copy of the document that ESI has alleged is Purchase Order no. 9023(B)0l is attached here as **Exhibit 5**.

31.     In the underlying suit, ESI alleges the primary clarifiers and secondary clarifiers were "to be finish-painted in order to be fit for installation and use in the City of Lowell's Duck Island wastewater treatment plant, and were to be installed in the plant by ESI's customer, general contractor Waterline Industries Corporation."  See Ex. 3 at ¶36.

32.     In the underlying suit, ESI alleges that "DMB failed to perform its obligations such that the clarifiers were *** badly and improperly painted." Ex. 3 at ¶40.  In the underlying

5

suit, ESI further alleges that "local painters in Lowell" were retained to correct the improper painting.  Ex. 3 at ¶45.

33.    In the underlying suit, ESI alleges that DMB failed to correct its allegedly defective work on the clarifiers and also failed to reimburse ESI for the expenses that ESI allegedly incurred to correct DMB's defective work.  In the underlying suit, ESI alleges that, by providing defective clarifiers and then failing to correct them, DMB breached the contractual obligations that DMB allegedly undertook to ESI in connection with the clarifiers.

34.    In the underlying suit, ESI further alleges that DMB also failed to release certain equipment that ESI had ordered to ESI in violation of the payment terms that DMB had agreed to.

35.    In the underlying suit, ESI further alleges that, from approximately 2017 to 2019, DMB attempted to pass itself off as DMI in DMB's dealings with ESI, and, in doing so, allegedly gained access to "proprietary fabrication drawings for the erection and assembly of [ESI's] unique water and wastewater treatment equipment." ESI further alleges that in doing so, DMB violated Pennsylvania's Uniform Trade Secrets Act.  See Ex. 3 at ¶103, and generally at Count VI.

36.    In the underlying suit, ESI further alleges that Grafft controlled DMB and deliberately undercapitalized it and passed it off as DMI in order to perpetrate a corporate fraud on DMI's customers such as ESI.

37.    On information and belief, DMB contends that the EMC Companies are obligated to provide insurance coverage for DMB in the underlying suit under the terms of the CGL policy.

38.    On information and belief, Grafft contends that the EMC Companies are obligated

to provide insurance coverage for Grafft in the underlying suit under the terms of the CGL policy.

39.     The EMC companies deny they are obligated to provide insurance coverage for DMB or Grafft in the underlying suit, and deny they have any duty to defend or indemnify DMB or Grafft in the underlying suit.

40.     The EMC companies are currently providing a defense for DMB and Grafft in the underlying suit under a reservation of rights.  The EMC companies are providing that defense as a matter of their own discretion and deny the existence of any legal obligation to defend DMB and/or Graftt in the underlying suit.

41.     An actual controversy, as that term is used in to 28 U.S.C. §§ 2201, exists between the EMC Companies on the one hand and DMB and/or Grafft on the other, regarding the issue of whether the EMC Companies have any coverage obligations in connection with the underlying suit.

42.     ESI and Penn National are being joined as potentially necessary parties in this matter based their status as the plaintiffs in the underlying suit.

<u>**COUNT I**</u>
**<u>The CGL policy does not provide coverage for the claims asserted against DMB</u>**

43.     The CGL policy includes a Commercial General Liability Coverage form (form. No. CG 00 01 04 13).

44.     The CGL Coverage Form contains a Coverage A section that includes an Insuring Agreement that contains the following language:

> **1. Insuring Agreement**
>
> **a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.**

We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ***

b.    This insurance applies to "bodily injury" and "property damage" only if:

   (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)    The "bodily injury" or "property damage" occurs during the policy period; and

   (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

***

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has

8

**begun to occur.**

45.     No claims for "bodily injury" are alleged in the underlying suit.

46.     The CGL policy defines the term "property damage" as follows:

> **"Property damage" means:**
>
> **a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
>
> **b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**
>
> **For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.**

47.     No claims for "property damage" are alleged in the underlying suit and, if there was such a claim, any alleged "property damage" did not occur during EMC's policy period as required.

48.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, any such supposed "property damage" can only be covered if it is caused by an "occurrence".

49.     The CGL policy defines "occurrence" as follows:

> **"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

50.     In the underlying suit, DMB is accused of engaging in non-accidental conduct

9

that allegedly resulted in damages to ESI. Accordingly, no damages that were caused by an "occurrence" are at issue in the underlying suit.

51.     The Coverage A section of the CGL policy contains certain exclusions that provide alternative bases to negate coverage for any damages at issue in the underlying suit. As amended by the General Liability Elite Extension endorsement (form no. CG 7578 (2-19)), the CGL policy contains an Expected Or Intended Injury exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **a. Expected Or Intended Injury**
>
> **"Bodily injury" or "property damage" expected or intended from the standpoint of an insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.**

52.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Expected or Intended Injury exclusion would negate coverage for some or all of any such "property damage".

53.     The CGL coverage form contains a Contractual Liability exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **b.       Contractual Liability**
>
> **"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:**
>
> **(1)       That the insured would have in the absence of the contract or agreement; or**
> **(2)       Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the**

contract or agreement. ***

54.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Contractual Liability exclusion would negate coverage for some or all of any such "property damage".

55.     The CGL coverage form contains a Damage to Property exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **j.      Damage to Property**
>
> **"Property damage" to:**
>
> **(l)      Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; ***
>
> **(4)      Personal property in the care, custody or control of the insured; ***; or**
>
> **(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.**
>
> ***
>
> **Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement**

56.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Damage to Property exclusion would negate coverage for some or all of any such "property damage".

57.     The CGL coverage form contains a Damage to Your Product exclusion that includes the following language:

> **This insurance does not apply to:**

> **k.      Damage to Your Product**
>
> **"Property damage" to "your product" arising out of it or any part of it.**

58.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Damage to Your Product exclusion would negate coverage for some or all of any such "property damage".

59.     The CGL coverage form contains a Damage to Your Work exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **l.      Damage to Your Work**
>
> **"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.**

60.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Damage to Your Work exclusion would negate coverage for some or all of any such "property damage".

61.     The CGL coverage form contains a Damage To Impaired Property Or Property Not Physically Injured exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **m.      Damage To Impaired Property Or Property Not Physically Injured**
>
> **Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
>
> **(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**

12

**(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**

**This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

62.    To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Damage To Impaired Property Or Property Not Physically Injured exclusion would negate coverage for some or all of any such "property damage".

63.    The CGL coverage form contains a Recall Of Products, Work Or Impaired Property exclusion that includes the following language:

**This insurance does not apply to:**

**n.      Recall Of Products, Work Or Impaired Property**

**Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:**

**(1)      "Your product";**
**(2)      "Your work"; or**
**(3)      "Impaired property"; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.**

64.    To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, the Recall Of Products, Work Or Impaired Property exclusion would negate coverage for some or all of any such "property damage".

65.    The Coverage A Insuring Agreement states the CGL coverage does not apply to "property damage" that was known to an "insured" before the effective period of the CGL

13

policy.

66.     In the underlying suit, certain defendants, including DMB, moved to dismiss the claims that were asserted against them based the contention that they were not subject to jurisdiction in the Pennsylvania.

67.     In support of that jurisdictional objection, in or about January of 2020, Grafft submitted an Affidavit to the Court in the underlying suit.  A copy of the Affidavit that Grafft submitted to the Court in the underlying suit is attached hereto as **Exhibit 6.**

68.     In Grafft's Affidavit, Grafft testified that he was a manager of DMB and that, by the spring of 2019,  DMB was aware of ESI's complaints regarding the allegedly defective work performed by DMB in connection with the equipment that ESI had ordered from DMB.  See Ex. 6, ¶48.

69.     To the extent that DMB contends that claims for "property damage" are alleged in the underlying suit, any alleged "property damage" at issue in the underlying suit was known to DMB before the effective date of the CGL policy.

70.     The Coverage B section of the CGL policy applies, in certain circumstances, subject to all terms, exclusions and limitations in the CGL policy, to claims for "personal and advertising injury".

71.     No claims for "personal and advertising injury" are alleged in the underlying suit.

72.     As a result of any or all of the above, the EMC Companies have no duty under the CGL policy to defend or indemnify DMB in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory judgment in their favor and against Defendants, DMB, Grafft, ESI and Penn National, declaring, adjudging, and decreeing as follows:

14

(a)    That no claims for "bodily injury" or "property damage" caused by an "occurrence" have been alleged against DMB in the underlying suit;

(b)    That one or more exclusions in the CGL policy negate coverage for any "property damage" that DMB contends is at issue in the underlying suit;

(c)    That any "property damage" DMB contends is at issue in the underlying suit was known to DMB before the effective period of the CGL policy;

(d)    That no claims for "personal and advertising injury" were asserted in the underlying suit;

(e)    That, as a result, the EMC Companies have no obligation under the CGL policy to defend or indemnify DMB in the underlying suit; and

(f)    That the EMC Companies are entitled to such further relief this Court deems appropriate.

## COUNT II
## Late Notice as to DMB

1-72.   The EMC Companies restate and re-allege paragraphs 1-72 of Count I as and for paragraphs 1-72 of Count II, as though fully set forth herein.

73.   The CGL policy contains a Conditions section that includes a provision entitled Duties ln The Event Of Occurrence, Offense, Claim Or Suit that, as amended by Paragraph O. of the General Liability Elite Extension endorsement (form no. CG 7578 (2-19)), contains the following language:

**2.    Duties ln The Event Of Occurrence, Offense, Claim Or Suit**

**a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:**

**(1)    How, when and where the "occurrence" or offense took place;**

**(2)    The names and addresses of any injured persons and witnesses; and**

**(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.**

15

**b.** **If a claim is made or "suit" is brought against any insured, you must:**

    **(1)** **Immediately record the specifics of the claim or "suit" and the date received; and**

    **(2)** **Notify us as soon as practicable.**
    **You must see to it that we receive written notice of the claim or "suit" as soon as practicable.**

**c.** **You and any other involved insured must:**

    **(1)** **Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";**

    **(2)** **Authorize us to obtain records and other information;**

    **(3)** **Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and**

    **(4)** **Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.**

**d.** **No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.**

**e.** **The requirement in Condition 2.a. that you must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim, applies only when the "occurrence" or offense is known to:**

    **(1) You, if you are an individual or a limited liability company;**

    **(2) A partner, if you are a partnership;**

    **(3) A member or manager, if you are a limited liability company;**

    **(4) An "executive officer" or insurance manager, if you are a corporation; or**

    **(5) A trustee, if you are a trust.**

**f.** **The requirement in Condition 2.b. that you must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:**

    **(1) You, if you are an individual or a limited liability company;**

16

**(2) A partner, if you are a partnership;**
**(3) A member or manager, if you are a limited liability**
    **company;**
**(4) An "executive officer" or insurance manager, if you are a**
    **corporation; or**
**(5) A trustee, if you are a trust.**

74.     By failing to notify the EMC Companies of the circumstances that gave rise to the

underlying suit until December 14, 2020, DMB violated the Notice conditions in the CGL

policy.

75.     By failing to notify the EMC Companies of the underlying suit until December

14, 2020, DMB violated the Notice conditions in the CGL policy.

76.     As a result, the EMC Companies have no obligation under the CGL policy to

provide coverage for DMB in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory

judgment in their favor and against Defendants, DMB, Grafft, ESI and Penn National, declaring,

adjudging, and decreeing as follows:

(a)     That DMB violated the Notice conditions in the CGL policy with
        respect to the circumstances giving rise to the underlying suit
        and/or with respect to the underlying suit once it was filed;

(b)     That, as a result, the EMC companies have no obligation under the
        CGL policy to defend or indemnify DMB in the underlying suit; and

(c)     That the EMC Companies are entitled to such further relief this
        Court deems appropriate.

## COUNT III
### Grafft is not an "insured" on the CGL policy

1-76.   The EMC Companies restate and re-allege paragraphs 1-76 of Count II as and for

paragraphs 1-76 of Count III, as though fully set forth herein.

77.     The named insured on the CGL policy is DMB.  When the terms "you" and

17

"your" are used in the CGL policy, those terms refer to DMB. The CGL policy contains a "Who

Is An Insured" provision that includes the following language:

> **SECTION II WHO IS AN INSURED**
>
> **1.   If you are designated in the Declarations as:**
>
> \*\*\*
>
>     **c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.**
>
> **2.   Each of the following is also an insured:**
>
>     **a.   Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:**
>
> \*\*\*
>
>     **(2)   "Property damage" to property:**
>     **(a) Owned, occupied or used by,**
>     **(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).**

78.   To the extent Grafft can qualify as an "insured" on the CGL policy, he can only

do so with respect to the discharge of his duties in the conduct of DMB's business.

79.   In the underlying suit, claims are alleged against Grafft in his individual capacity

based on his allegedly improper use of DMB to participate in a "corporate fraud" for which

Grafft is allegedly personally liable.

80.   Because Grafft is accused of engaging in improper acts or omissions to obtain a

personal benefit in his individual capacity, he is not an "insured" on the CGL policy for purposes of the underlying suit.

81.     As a result, the EMC Companies have no duty under the CGL policy to defend or indemnify Grafft in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory judgment in their favor and against Defendants, DMB, Grafft, ESI and Penn National, declaring, adjudging, and decreeing as follows:

(a)     That in the underlying suit, Grafft is accused of engaging in allegedly improper acts or omissions in order to derive a personal benefit;

(b)     That Graft fails to qualify as an "insured" on the CGL policy for acts or omissions he allegedly took in his personal capacity;

(c)     That, as a result, the EMC Companies have no obligation under the CGL policy to defend or indemnify Graft in the underlying suit; and

(d)     That the EMC Companies are entitled to such further relief this Court deems appropriate.

## <u>COUNT IV</u>
## <u>The CGL policy does not provide coverage for the claims asserted against Graft</u>

1-81.   The EMC Companies restate and re-allege paragraphs 1-81 of Count III as and for paragraphs 1-81 of Count IV, as though fully set forth herein.

82.     The CGL policy includes a Commercial General Liability Coverage form (form. No. CG 00 01 04 13).

83.     The CGL Coverage Form contains a Coverage A section that includes an Insuring Agreement that includes the following language:

**1.     Insuring Agreement**

**a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.**

We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ***

b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

***

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who ls An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

> **(3)** **Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.**

84.     No claims for "bodily injury" are alleged in the underlying suit.

85.     The CGL policy defines the term "property damage" as follows:

> **"Property damage" means:**
>
> **a.**     **Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
>
> **b.**     **Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**
>
> **For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.**

86.     No claims for "property damage" are alleged in the underlying suit against Grafft and, if there was such a claim, any alleged "property damage" did not occur during EMC's policy period as required.

87.     To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, any such supposed "property damage" can only be covered if it is caused by an "occurrence".

88.     The CGL policy defines "occurrence" as follows:

> **"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

89.     In the underlying suit, Grafft is accused on engaging in non-accidental conduct that allegedly resulted in damages to ESI. Accordingly, no damages that were caused by an

"occurrence" are at issue in the underlying suit.

90.    The Coverage A section of the CGL policy contains certain exclusions that provide alternative bases to negate coverage for any damages at issue in the underlying suit.  As amended by the General Liability Elite Extension endorsement (form no. CG 7578 (2-19)), the CGL policy contains an Expected Or Intended Injury exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **a. Expected Or Intended Injury**
>
> **"Bodily injury" or "property damage" expected or intended from the standpoint of an insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.**

91.    To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, the Expected or Intended Injury exclusion would negate coverage for some or all of any such "property damage".

92.    The CGL coverage form contains a Contractual Liability exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **b.       Contractual Liability**
>
> **"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:**
>
> **(1)     That the insured would have in the absence of the contract or agreement; or**
> **(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. \*\*\***

22

93.     To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, the Contractual Liability exclusion would negate coverage for some or all of any such "property damage".

94.     The CGL coverage form contains a Damage to Property exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **j.     Damage to Property**
>
> **"Property damage" to:**
>
> **(l)     Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; \*\*\***
>
> **(4)     Personal property in the care, custody or control of the insured; \*\*\*; or**
>
> **(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.**
> **\*\*\***
> **Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.**

95.     To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, the Damage to Property exclusion would negate coverage for some or all of any such "property damage".

96.     The CGL coverage form contains a Damage to Your Product exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **k.     Damage to Your Product**

**"Property damage" to "your product" arising out of it or any part of it.**

97.     To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, the Damage to Your Product exclusion would negate coverage for some or all of any such "property damage".

98.     The CGL coverage form contains a Damage to Your Work exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **l.      Damage to Your Work**
>
> **"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.**

99.     To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, the Damage to Your Work exclusion would negate coverage for some or all of any such "property damage".

100.    The CGL coverage form contains a Damage To Impaired Property Or Property Not Physically Injured exclusion that includes the following language:

> **This insurance does not apply to:**
>
> **m.      Damage To Impaired Property Or Property Not Physically Injured**
>
> **Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
>
> > **(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**
> >
> > **(2)      A delay or failure by you or anyone acting on your**

24

behalf to perform a contract or agreement in
accordance with its terms.

This exclusion does not apply to the loss of use of other property
arising out of sudden and accidental physical injury to "your
product" or "your work" after it has been put to its intended use.

101.    To the extent that Grafft contends that claims for "property damage" are alleged
in the underlying suit, the Damage To Impaired Property Or Property Not Physically Injured
exclusion would negate coverage for some or all of any such "property damage".

102.    The CGL coverage form contains a Recall Of Products, Work Or Impaired
Property exclusion that includes the following language:

This insurance does not apply to:

n.      Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or
others for the loss of use, withdrawal, recall, inspection, repair,
replacement, adjustment, removal or disposal of:

(1)     "Your product";
(2)     "Your work"; or
(3)     "Impaired property";
if such product, work, or property is withdrawn or
recalled from the market or from use by any person or
organization because of a known or suspected defect,
deficiency, inadequacy or dangerous condition in it.

103.    To the extent that Grafft contends that claims for "property damage" are alleged
in the underlying suit, the Recall Of Products, Work Or Impaired Property exclusion would
negate coverage for some or all of any such "property damage".

104.    The Coverage A Insuring Agreement states the CGL coverage does not apply to
"property damage" that was known to an "insured" before the effective period of the CGL
policy.

105.    In the underlying suit, certain defendants, including DMB, moved to dismiss the

25

claims that were asserted against them based the contention that they were not subject to jurisdiction in the Pennsylvania.

106.    In support of that jurisdictional objection, in or about January of 2020, Grafft submitted an Affidavit to the Court in the underlying suit.  A copy of the Affidavit that Grafft submitted to the Court in the underlying suit is attached hereto as Ex. 6.

107.    In Graftt's Affidavit, Grafft indicated that, by the spring of 2019, DMB and Grafft were aware of ESI's complaints regarding the allegedly defective work performed by DMB in connection with the equipment that ESI had ordered from DMB.  See Ex. 6, ¶48.

108.    To the extent that Grafft contends that claims for "property damage" are alleged in the underlying suit, and to the extent that Grafft claims to be an "insured" on the CGL policy, any alleged "property damage" at issue in the underlying suit was known to DMB and/or Grafft before the effective date of the CGL policy.

109.    The Coverage B section of the CGL policy applies, in certain circumstances, subject to all terms, exclusions and limitations in the CGL policy, to claims for "personal and advertising injury".

110.    No claims for "personal and advertising injury" are alleged in the underlying suit.

111.    As a result of any or all of the above, even if Grafft could qualify as an "insured" on the CGL policy (and the EMC Companies deny he can do so), the EMC Companies would have no duty under the CGL policy to defend or indemnify Grafft in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory judgment in their favor and against Defendants, DMB, Grafft, ESI and Penn National, declaring, adjudging, and decreeing as follows:

(a)    That no claims for "bodily injury" or "property damage" caused by an "occurrence" have been alleged against Grafft in the underlying

suit;

(b)     That one or more exclusions in the CGL policy negate coverage
for any "property damage" that Grafft contends is at issue in the
underlying suit;

(c)     That any "property damage" Grafft contends is at issue in the
underlying suit was known to DMB and/or Grafft before the
effective period of the CGL policy;

(d)     That no claims for "personal and advertising injury" at were
asserted in the underlying suit;

(e)     That, as a result, even if Grafft could qualify as an "insured" on the
CGL policy for purposes of the underlying suit, the EMC
Companies have no obligation under the CGL policy to defend or
indemnify Grafft in the underlying suit; and

(f)     That the EMC Companies are entitled to such further relief this
Court deems appropriate.

## Count V – Late Notice as to Grafft

1-111.  The EMC Companies restate and re-allege paragraphs 1-111 of Count IV as and

for paragraphs 1-111 of Count V, as though fully set forth herein.

112.    The CGL policy contains a Conditions section that includes a provision entitled

Duties ln The Event Of Occurrence, Offense, Claim Or Suit that, as amended by Paragraph O. of

the General Liability Elite Extension endorsement (form no. CG 7578 (2-19)), contains the

following language:

> **2.      Duties ln The Event Of Occurrence, Offense, Claim Or Suit**
>
> **a.      You must see to it that we are notified as soon as practicable of
> an "occurrence" or an offense which may result in a claim. To
> the extent possible, notice should include:**
>
> **(1)     How, when and where the "occurrence" or offense took
> place;**
> **(2)     The names and addresses of any injured persons and
> witnesses; and**
> **(3)      The nature and location of any injury or damage
> arising out of the "occurrence" or offense.**

27

**b.** **If a claim is made or "suit" is brought against any insured, you must:**

    **(1)** **Immediately record the specifics of the claim or "suit" and the date received; and**

    **(2)** **Notify us as soon as practicable.**
           **You must see to it that we receive written notice of the claim or "suit" as soon as practicable.**

**c.** **You and any other involved insured must:**

    **(1)** **Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";**

    **(2)** **Authorize us to obtain records and other information;**

    **(3)** **Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and**

    **(4)** **Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.**

**d.** **No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.**

**e.** **The requirement in Condition 2.a. that you must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim, applies only when the "occurrence" or offense is known to:**

    **(6) You, if you are an individual or a limited liability company;**

    **(7) A partner, if you are a partnership;**

    **(8) A member or manager, if you are a limited liability company;**

    **(9) An "executive officer" or insurance manager, if you are a corporation; or**

    **(10)** **A trustee, if you are a trust.**

**f.** **The requirement in Condition 2.b. that you must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:**

    **(6) You, if you are an individual or a limited liability company;**

    **(7) A partner, if you are a partnership;**

> **(8)** **A member or manager, if you are a limited liability**
> **company;**
> **(9)** **An "executive officer" or insurance manager, if you are a**
> **corporation; or**
> **(10)** **A trustee, if you are a trust.**

113.    By failing to notify the EMC companies of the circumstances that gave rise to the

underlying suit until December 14, 2020, Grafft violated the Notice conditions as set forth above.

114.    By failing to notify the EMC companies of the underlying suit until December 14,

2020, Grafft violated the Notice conditions as set forth above.

115.    As a result, the EMC Companies have no obligation under the CGL policy to

provide coverage for Grafft in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory

judgment in their favor and against Defendants, DMB, Grafft, ESI and Penn National, declaring,

adjudging, and decreeing as follows:

(a)    That Grafft violated the Notice Conditions in the CGL policy with
respect to the circumstances giving rise to the underlying suit
and/or with respect to the underlying suit once it was filed;

(b)    That, as a result, the EMC Companies have no obligation under the
CGL policy to defend or indemnify Grafft in the underlying suit;
and

(c)    That the EMC Companies are entitled to such further relief this
Court deems appropriate.

### Count VI – No Coverage for DMB or Grafft under the CU policy

1-115.  The EMC Companies restate and re-allege paragraphs 1-115 of Count V as and

for paragraphs 1-115 of Count VI, as though fully set forth herein.

116.    The CU policy provides coverage (in certain circumstances, subject to all terms,

exclusions, conditions and limitations of the CU policy) that is excess to the CGL policy.

117.    The CU policy contains coverage terms that are similar or identical to the terms

and conditions in the CGL policy that preclude coverage for both DMB and Grafft in connection with the underlying suit.

118.    To the extent that DMB and/or Grafft contend that either or both of them could be entitled to coverage under the CU policy for purposes of the underlying suit, the terms and conditions of the CU policy that are similar or identical to the provisions in the CGL policy that are identified in Counts I-V would negate coverage under the CU policy as well.

119.    As a result, the EMC Companies have no obligation under the CU policy to provide coverage for DMB or Grafft in the underlying suit.

WHEREFORE, Plaintiffs, the EMC Companies, pray that this Court enter declaratory judgment in their favor and against Defendants Defendants, DMB, Grafft, ESI and Penn National, declaring, adjudging, and decreeing as follows:

    (a)    That the CU policy contains provisions that are similar or identical to the provisions in the CGL policy identified in Counts I-V;

    (b)    That, as a result, the EMC Companies have no obligation under the CU policy to defend or indemnify DMB or Grafft in the underlying suit; and

    (c)    That the EMC Companies are entitled to such further relief this Court deems appropriate.

Respectfully submitted,

s/ *Brian O'Gallagher*
Attorney for Defendants
EMCASCO INSURANCE COMPANY and
EMPLOYERS MUTUAL CASUALTY COMPANY

Brian A. O'Gallagher (ARDC No. 6211445)
Bodell Bove LLC
2215 York Road, Ste. 515
Oak Brook, IL 60523
Phone: (630) 382-4800
Fax: (630) 468-2158